IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH A. MARTINO,

                Plaintiff,

        v.                         CASE NO.  11-3075-SAC

UNITED STATES MARSHAL
SERVICE, et al.,

                Defendants.

### MEMORANDUM AND ORDER

Mr. Martino, a federal prison inmate, filed this pro se civil complaint and paid the filing fee in full. He claims that unsanitary conditions and denial of proper initial medical treatment at a county jail caused him to contract a serious ongoing medical condition. Upon screening the complaint the court entered a Memorandum and Order in which it granted plaintiff time to submit his complaint upon forms and to show cause why his claims should not be dismissed for reasons stated in the Memorandum and Order, including that the claims appear to be time-barred. Plaintiff has submitted his complaint upon forms as required, and this Amended Complaint (Doc. 6) now governs this dispute. He has also filed his Response to Order to Show Cause (Doc. 7). Having considered all materials filed together with the relevant legal authority, the court rejects plaintiff's argument that his claims accrued some time after he was released from the county jail. Accordingly, the court dismisses this action as time-barred and denies all relief.

**ALLEGATIONS IN AMENDED COMPLAINT**

In his Amended Complaint, Mr. Martino has deleted several defendants, and now names only James Gilchrist, in his individual capacity and "as Captain of the JCDC"; and County of Jackson, Kansas.[1] He sets forth two claims: (1) "gross negligence" under state law[2] and (2) cruel and unusual punishment.[3] As factual support for both claims, he alleges the following. On March 25, 2008, Mr. Martino was arrested in Saline County, Kansas for federal drug law violations. He was transferred to the Jackson County Detention Center (JCDC) for pretrial detention after his first appearance or arraignment, which was on March 28, 2008.[4] During intake, plaintiff stated that he has Jobbs Syndrome and back problems. Thus, defendants were "completely aware" that plaintiff

---

[1] Plaintiff again includes "John Does 1-25" as defendants. However, he has never provided information from which the identity of any of these persons might be ascertained. Nor does he describe what acts or inactions they personally took that resulted in his alleged injuries. Thus, there is no way that service could be effectuated upon any of these John Doe defendants by mail or otherwise.

[2] Generally, claims based upon state law are not grounds for relief in a civil rights complaint. Plaintiff asserts that the court has pendent jurisdiction over his state law claim, but that is correct only if the court also has jurisdiction over some federal claim. The court assumes that plaintiff might assert diversity jurisdiction in any event.

[3] In the body of his complaint, plaintiff also asserts violation of his rights to due process under the Fifth and Fourteenth Amendments. A federal pretrial detainee has a right to be free from punishment under the Due Process Clause. Bell v. Wolfish, 441 U.S. 510, 535 (1979). However, the Eighth Amendment standard provides the analytic framework for such claims. See Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmate's safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998).

[4] The court takes judicial notice of the records in Mr. Martino's criminal case, which show that his arraignment was held on March 28, 2008. U.S. v. Martino, 08-cr-40027-SAC (Doc. 3).

"was susceptible to contracting the MRSA disease."[5]  Three days later, plaintiff asked to see medical staff for back pain and a skin infection on his shoulder.  He was not seen until April 16, 2008, and then was prescribed an antibiotic.  On September 23, 2008, plaintiff requested medical attention for an infection on his nose.  He was promptly seen by medical staff, given medication, and a culture was taken.  On September 27, 2008, "a positive finding of Methicillin-Resistant Staphlococcus Aureus (MRSA) was made from the culture," and new medication was prescribed.  Plaintiff alleges that no follow-up care was given at the same time that he alleges that during the period of April through December 2008, he "was treated for MRSA but was charged for prescriptions and medical treatment."  On December 12, 2008, Mr. Martino was granted pretrial release and allowed to return to California.  From April 2009 through October 2009, he was treated by private health care providers in California for MRSA outbreaks.

Plaintiff does not describe specific acts by defendant Gilchrist or any of the John Doe defendants or any particular unsanitary condition caused by them that led to his allegedly contracting MRSA while at the JCDC.  Nor does he describe any

---

[5]  Apparently in support of this statement, plaintiff also alleges that the sentencing court, which was the undersigned judge, "even advised the JCDC ahead of time that Plaintiff was predisposed" to MRSA and acknowledged along with the U.S. Attorney's Office that the JCDC was known to have a problem with infectious diseases.  These matters were raised by defense counsel and are reflected in the presentence report.  However, plaintiff did not appear before the undersigned for sentencing prior to his detention at the JCDC.

3

actual policy of the county[6] that led to his contracting MRSA while there. Instead, he makes the following conclusory allegations. Defendants subjected him to unhealthy, unsanitary, substandard conditions at the JCDC that resulted in his being exposed to and infected with MRSA, and his injuries were "consistent with an institutionalized practice" of the JCDC which was known to defendant Gilchrist and Jackson County. Defendants failed to "properly train Defendants (and John Does);" to "instruct them in the applicable Kansas state laws and the proper . . . practice of institutionalized standard of care;" to take any effective action to prevent "JCDC personnel from continuing to engage in this type of conduct;" and to control and discipline employees, including the named defendants known to be irresponsible and practicing deliberate indifference. Defendants tolerated the negligent misconduct" and "tolerated as institutionalized practices" the "failure to follow routine maintenance for sanitary and healthful living conditions to prevent disease" and the "failure to implement screening measures for infection for all inmates."

Plaintiff does allege specific facts indicating that he has

---

[6] Plaintiff indicates in his Amended Complaint that he is suing defendant Gilchrist in his individual and official capacities. "[A section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." Watson v. City of Kansas City, 857 F.2d 690, 695 (10th Cir. 1988). "A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. Of County Com'rs, 151 F.3d 1313, 1316 (10th Cir. 1998). Thus, in order to hold Jackson County liable, Mr. Martino must show that his injuries were the result of an unconstitutional "policy or custom" established by the policymakers for Jackson County. See St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)(plurality opinion). Neither an individual nor a municipality can be liable in a civil rights action on a theory of respondeat superior. Hafer v. Melo, 502 U.S. 21, 25 (1991).

4

suffered serious injuries as a result of his having contracted MRSA.[7]  He seeks compensatory and punitive damages and costs of this action.

**RESPONSE TO ORDER TO SHOW CAUSE**

In the court's screening order, Mr. Martino was informed that a court may "consider affirmative defenses sua sponte" for the purpose of dismissal under 28 U.S.C. § 1915 "when the defense is obvious from the face of the complaint and no further factual record is required to be developed."  Fratus v. Deland, 49 F.3d 673, 674-675 (10th Cir. 1995)(quotations and alterations omitted).  The court applied the two-year statute of limitations for personal injury actions in Kansas to his claims,[8] and found they had "accrued" prior to his release from the JCDC on December 12, 2008.  It further found that Mr. Martino had executed his complaint on March 30, 2011, which was more than two years after his claims had accrued and that any pre-March 30, 2009 claims were time-barred as

---

[7] He alleges that he has "suffered significant pain and scar deformities from multiple surgical procedures;" has suffered "from multiple psychological conditions" requiring treatment; his immune system has been permanently damaged so that he needs lifelong medical treatment; he is now unisurable; and he has incurred thousands of dollars in medical and pharmacy costs.

[8] Federal courts apply state statutes of limitations for personal injury actions to § 1983 claims.  See Wallace v. Kato, 549 U.S. 384 (2007); Wilson v. Garcia, 471 U.S. 261, 276 (1985).  "[A] Bivens action, like an action brought pursuant to 42 U.S.C. 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose."  Industrial Constructors Corp. v. Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994)(citing Wilson 471 U.S. at 261).  Because plaintiff's cause of action arose in Kansas, the court applies Kansas' two-year statute of limitations period for bringing an action for "injury to the rights of another."  Kan. Stat. Ann. 60-513(a)(4); see also Johnson v. Johnson County Com'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991).

a result.

In his Response Mr. Martino does not dispute that a two-year statute of limitations applies in this case, but disagrees that his claims accrued before his release from the JCDC. He argues that his claims did not accrue "until 5 months later, i.e., the early part of April 2009, when he had an outbreak again and went to see his family doctor." He claims it was not until then that he discovered "both the existence and cause" of "this subtle and more complicated than normal injury." Mr. Martino is thus not asking the court to toll the statute of limitations on equitable grounds, but to delay the accrual of his claims. In support of this argument, he alleges that he "was clean with no staph infection prior to being arrested;" and that after "a positive finding of MRSA was made on September 27, 2008," he was given new medication and "the outbreak symptom had disappeared," which led him to believe that the MRSA was "gone and under control." He further alleges it was in April 2009 that "the severity of the injury was ascertained by a professional medical practitioner," his "doctor concluded that the MRSA had re-occurred" due to defendants' substandard treatment, and proper medical treatment was commenced. He states that "as a layperson," he "would not have known the true diagnosis otherwise." Based on these allegations, he contends that the limitations period did not begin to run until April 2009, and that the filing of his complaint in March 2011 was "well within" the two-year limitations period.

**LEGAL STANDARDS**

The limitations period begins to run when the cause of action accrues, and the accrual of an action is determined by federal law. Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1154 (10th Cir. 1998). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (quotation omitted). It is the factual basis of a claim, and not its legal basis, which determines when a civil rights action accrues. Fratus, 49 F.3d at 675. In other words, a civil rights action accrues when "facts that would support a cause of action are or should be apparent." Id.; Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006)(internal quotation marks and citation omitted); see Thorpe v. Ancell, 367 Fed.Appx. 914, 920 (10th Cir. 2010)(unpublished).[9] Because the injury in a civil rights action is the violation of a constitutional right, "such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." Fratus, 49 F.3d at 675 (quotations omitted).

**DISCUSSION**

The allegations in plaintiff's Amended Complaint clearly show that his claims for relief are barred by the applicable statute of limitations. Plaintiff alleges that the acts of defendants caused him to contract MRSA. As factual support, he

---

[9] Unpublished opinions are not cited herein as binding precedent, but for persuasive reasoning. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

7

generally alleges that defendants failed to maintain sanitary conditions and to control the spread of MRSA at the county jail. He also alleges that defendants failed to provide him with proper initial medical treatment at the jail. Thus, the defendants' acts or inactions of which plaintiff complains are all alleged to have occurred at the jail. Plaintiff's detention at the Jackson County Jail was from March 28 to December 12, 2008. It logically follows that plaintiff's claims accrued during that time frame. Plaintiff does not allege any facts establishing that defendants committed other constitutional violations within two years of his filing this lawsuit.

Plaintiff does not even argue "that the defendants committed further constitutional violations against him within the two-year statutory period preceding the filing of his complaint." Rather, he relies upon allegations that "he was subjected to continuing and worsening ill effects . . . from the defendants' original actions." See Frazier v. Jordan, ___Fed.Appx.___, 2007 WL 60883 at *4 (10th Cir.)(unpublished), cert. denied, 550 U.S. 975 (2007)). He then argues that he did not become aware of the ramifications of the alleged jail conditions and delay of treatment until April 2009. It is clear from plaintiff's pleadings that he was aware or should have been aware of his injury, that is his contraction of MRSA, and its causes at the time the alleged tortious acts by defendants occurred at the jail in 2008. See Zeidler v. United States, 601 F.2d 527, 530 (10th Cir. 1979)("a claim does not accrue until a claimant has had a reasonable

8

opportunity to discover all of the essential elements of a possible cause of action . . ."). Plaintiff's own allegations indicate that he first learned he had contracted MRSA in September 2008 at the JCDC, and not in April 2009 from his private physician. Cf. Phillips v. Purdy, 617 F.2d 139, 140-141 (5th Cir. 1980)(reversing dismissal of prisoner's § 1983 action on statute of limitations ground because "[i]f the plaintiff is able to show a satisfactory reason why he did not learn until 1976 that his tuberculosis condition was brought about by his confinement in the Dade County Jail, the period of limitations may not have begun to run until that time"). His allegations include the dates on which he was diagnosed with and treated for MRSA at the JCDC and indicate that he expressed his fear of contracting MRSA given his predisposition to infections. The fact that plaintiff's symptoms became much worse upon recurrence after his release does not establish that his claims based upon his having contracted MRSA accrued at this later time. See Helling v. McKinney, 509 U.S. 25, 33 (1993)(exposure of inmates to a "serious, communicable disease" can violated Eighth Amendment even if "the complaining inmate shows no serious current symptoms"); Lymon v. Aramark Corp., 728 F.Supp.2d 1207, 1220 (D.N.M. 2010).

  Plaintiff does not expressly argue in this case that there was a continuing violation, nor could he. "The continuing violation theory 'is a creation of federal law that arose in Title VII cases' and 'recognizes that certain violations are continuing in nature." Frazier, 2007 WL 60883 at *4 (citing Thomas v.

9

Denny's, Inc., 111 F.3d 1506, 1513 (10th Cir. 1997)).  The Tenth Circuit has not recognized the applicability of this theory to civil rights claims.  In any event, to "establish a continuing violation, a plaintiff must show that the claimed discriminatory acts that occurred outside the limitations period were sufficiently related to at least one act occurring within the relevant filing period, thereby constituting a continuing pattern of discrimination."  Id. (citing Furr v. AT & T Tech., Inc., 824 F.2d 1537, 1543 (10th Cir. 1987)).  In the absence of a violative act by a defendant "within the two years before this suit was instituted by plaintiff, the continuing violation doctrine does not apply."  Palmer v. Board of Com'rs for Payne County Oklahoma, 765 F.Supp.2d 1289, 1299 (W.D. Okla.), aff'd, 441 Fed.Appx. 582 (10th Cir. 2011).  "The continuing violations doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation."  Id. (citing Bergman v. U.S., 751 F.2d 314, 317 (10th Cir. 1984), cert. denied, 474 U.S. 95 (1985)).

Even accepting as true that plaintiff did not realize the full ramifications of his injuries until April 2009, this date was well before the expiration of the actual two-year statute of limitations in this case.  Had he discerned the correct accrual date and diligently pursued his claims, they would not be time-barred.  Mr. Martino provides no reason why he failed to file this action earlier.[10]

---

[10] State law also governs the grounds for tolling the limitations period.  See Alexander v. Oklahoma, 382 F.3d 1206, 1217 (10th Cir. 2004), cert. denied, 544 U.S. 1044 (2005).  Plaintiff's Amended Complaint alleges no facts and

10

In sum, Mr. Martino unfortunately failed to timely file his civil rights claims within two years of his discovery of the jail conditions and MRSA infection that form the basis for his claims. Thus, his claims for monetary relief against defendants for the allegedly unconstitutional conditions during his confinement in the Jackson County Jail are barred by the applicable statute of limitations and must be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b).  See Price v. Philpot, 420 F.3d 1158, 1162 (10th Cir. 2005).

**IT IS THEREFORE BY THE COURT ORDERED** that this action is dismissed as time-barred, and all relief is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Order Allowing Service by . . . Certified Mail on All Defendants" (Doc. 2) is denied as moot.

**IT IS SO ORDERED.**

Dated this 14th day of March, 2012, at Topeka, Kansas.

　　　　　　　　　　　　　　　　s/Sam A. Crow
　　　　　　　　　　　　　　　　U. S. Senior District Judge

---

cites no authority under Kansas law that would entitle him to tolling.  Nor is this a case where the plaintiff claims that diminished mental capacity resulted from the alleged constitutional violation and prevented him from all awareness of his injury or its cause, or that he was prevented from recognizing his injuries by government malfeasance.

11